**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil No. 1:26-cv-12952 |
| v. | |
| COMMONWEALTH OF MASSACHUSETTS; MASSACHUSETTS BOARD OF HIGHER EDUCATION; NOE ORTEGA, Ex Officio, Massachusetts Commissioner of Higher Education and Secretary to the Board of Higher Education, in his official capacity, | **COMPLAINT** |
| Defendants. | |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**INTRODUCTION**

Federal law prohibits illegal aliens in our Nation from receiving resident tuition benefits that are denied to U.S. citizens residing in other states. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet in 2023, Massachusetts passed the "High School Completers" Tuition Equity Law, House Bill H4040, subsequently codified at Mass. Gen. Laws ch. 15A, §9, which extends eligibility for in-state tuition benefits, financial aid, and scholarships at Massachusetts colleges to illegal aliens, while requiring payment of higher tuition rates by and denying similar benefits to U.S. citizens from other states. This is blatant unequal treatment favoring illegal aliens over U.S. citizens from other states. Worse, such preferential treatment is squarely prohibited and preempted by Congress. Federal law mandates that "an alien who is not lawfully present in the United States *shall not* be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). Accordingly, under the Supremacy Clause of our Nation's Constitution, Mass. Gen. Laws ch. 15A,

§ 9's extension of eligibility for postsecondary education benefits to illegal aliens is unconstitutional and must yield to federal law.

This Court should declare the Massachusetts law challenged herein preempted and unconstitutional, and the Court should permanently enjoin its operation and enforcement.

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

2.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because: (1) all Defendants reside in this judicial district; and (2) a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

3.     The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2; 28 U.S.C. §§ 1651, 2201, and 2202; and the Court's inherent equitable powers.

## PARTIES

4.     Plaintiff—the United States of America—regulates immigration under its inherent, constitutional, and statutory authorities. The United States enforces federal immigration laws through its Executive agencies, including the Department of Justice, Department of Homeland Security ("DHS"), and DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

5.     Defendant Commonwealth of Massachusetts is a state of the United States.

6.     Defendant Massachusetts Board of Higher Education is the executive branch agency of the Commonwealth of Massachusetts responsible for defining the mission of and coordinating the Commonwealth's system of public higher education and its institutions, including relevant loans, grants, and scholarships. *See* Mass. Gen. Laws ch. 15A, §§ 4, 9.

7.     Defendant Noe Ortega is the Ex Officio Commissioner of Higher Education and Secretary to the Massachusetts Board of Higher Education. *See* Mass. Gen. Laws ch. 15A, §§ 4, 6. Plaintiff sues him in his official capacity.

**FEDERAL LAW**

8.    The Constitution empowers Congress to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

9.    The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, which necessarily includes his duty to take care over immigration matters.

10.    The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from its inherent obligations as a sovereign, the Constitution, and numerous acts of Congress. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.").

11.    Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining that matters of immigration concern "policy questions entrusted exclusively to the political branches of our Government," leaving "no judicial authority" for courts "to substitute [their] political judgment for that of the Congress").

12. Specifically, in 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). Those Acts sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See id.*; *see also* 8 U.S.C. § 1601(1) ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

13. Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id.* § 1601(2)(A).

14. Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B).

15. Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(5), (6).

16. PRWORA also states: "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible . . . only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d).

17. But even in such cases, a state may not offer in-state tuition (or "resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, if those same benefits are denied to American citizens from other states. *See* 8 U.S.C. § 1623(a). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id.*

18.    Section 1623(a) provides that:

Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a).

19.    Accordingly, under Section 1623(a), illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are also offered to all American citizens, regardless of their state of residence.

20.    On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[1] ordering Federal Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id*. § 2(a).

21.    On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[2] directing relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." *Id*. § 5.

22.    These Executive Orders emphasize that Federal and state governments must not confer greater benefits to illegal aliens present in our Nation than to American citizens. They also reflect Congress's end—expressed in multiple provisions of the Immigration and Nationality

---

[1] Exec. Order No. 14218, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025), available at https://www.federalregister.gov/documents/2025/02/25/2025-03137/ending-taxpayer-subsidization-of-open-borders.

[2] Exec. Order No. 14287, *Protecting American Communities From Criminal Aliens*, 90 Fed. Reg. 18761 (Apr. 28, 2025), available at https://www.federalregister.gov/documents/2025/05/02/2025-07789/protecting-american-communities-from-criminal-aliens.

Act—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for American citizens.

<b>THE MASSACHUSETTS LAWS</b>

**I.    Massachusetts Makes Illegal Aliens Eligible for Resident Tuition.**

23.    In direct conflict with Federal law, Massachusetts law rewards an illegal alien present in our Nation with eligibility for in-state tuition based on residence within that state, while explicitly denying eligibility for resident tuition rates to U.S. citizens who are not Massachusetts residents. *See* Mass. Gen. Laws ch. 15A, §§ 5, 9.

24.    Massachusetts, like most states, charges two separate tuition rates at Massachusetts public institutions of higher education: resident and nonresident tuition. *See* Mass. Gen. Laws ch. 15A, §§ 9 (regarding in-state tuition), 5 (defining public institutions of higher learning).[3]

25.    The governing boards of each public institution of higher education in Massachusetts have the authority under Massachusetts law to set "tuition and fees." Mass. Gen. Laws ch. 15A, § 9.

26.    The Massachusetts Board of Higher Education develops a statewide tuition plan and approves tuition rates.  *See* Mass. Gen. Laws ch. 15A, § 9.

27.    Massachusetts Public Institutions of Higher Education set different tuition rates for in-state residents and nonresidents. For example, Bridgewater State University charges Massachusetts residents approximately $12,194 for tuition and fees for one academic year but charges non-Massachusetts residents approximately $18,334.[4]

---

[3] "Public institutions of higher education system" is a defined term in Massachusetts law. Mass. Gen. Laws ch. 15A, § 5 ("There shall be, for the purposes of this chapter, a system of public institutions of higher education, hereinafter called the system, which shall consist of the following segments: (i) the university of Massachusetts segment, which shall consist of the University of Massachusetts at Amherst, Boston, Dartmouth, Lowell and Worcester; (ii) the state university segment, which shall consist of Bridgewater State University, Fitchburg State University, Framingham State University, the Massachusetts College of Art and Design, the Massachusetts Maritime Academy, the Massachusetts College of Liberal Arts, Salem State University, Westfield State University and Worcester State University; and (iii) the community college segment, which shall consist of Berkshire Community College, Bristol Community College, Bunker Hill Community College, Cape Cod Community College, Greenfield Community College, Holyoke Community College, Massachusetts Bay Community College, Massasoit Community College, Middlesex Community College, Mount Wachusett Community College, Northern Essex Community College, North Shore Community College, Quinsigamond Community College, Roxbury Community College and Springfield Technical Community College.").

[4] Bridgewater State University, *Cost & Aid*, https://www.bridgew.edu/cost-aid (last visited June 24, 2026).

6

28.     Similarly, Massachusetts College of Art and Design (MassArt) in Boston, charges Massachusetts residents approximately $15,860 for one year of tuition but charges out-of-state students approximately $44,700.[5]

29.     The same substantially less expensive cost of attendance for Massachusetts residents compared to non-Massachusetts residents holds across other Massachusetts public institutions of higher education,[6] including at community colleges in Massachusetts.[7]

30.     Since 2023, Mass. Gen. Laws ch. 15A, § 9 ("Section 9") has rewarded illegal aliens who violate our Nation's immigration laws with eligibility for in-state tuition benefits in Massachusetts while denying that same benefit to U.S. citizens who are not Massachusetts residents.

31.     Section 9 unequivocally makes illegal aliens living in Massachusetts eligible to receive resident tuition in Massachusetts.

32.     Under Section 9, an individual "other than a nonimmigrant alien within the meaning of 8 U.S.C. § 1101(a)(15)(A) to (S)"[8] "shall be eligible to pay in-state tuition rates and fees at public institutions of higher education and shall be eligible on the same terms as other individuals for state-funded financial assistance at state-funded public and state-approved private, independent nonprofit institutions of higher education[,]" if the individual:

(1) has been "admitted to such institutions of higher education"; and

(2) "attended high school in the commonwealth for not less than 3 years and graduated from a high school in the commonwealth or attained the equivalent thereof in the commonwealth"; and

---

[5] MassArt, *Undergraduate Tuition, Costs & Aid*, https://massart.edu/costs-aid/for-undergraduates/ (last visited June 24, 2026).

[6] *See, e.g.*, Massachusetts College of Liberal Arts, *Financial Aid Cost of Attendance*, https://mcla.edu/admission-aid/paying-for-college/financial-aid/cost-of-attendance.php (last visited June 24, 2026); Salem State University, *2026-2027 Tuition and Fees*, https://www.salemstate.edu/admissions-and-aid/tuition-and-fees (last visited June 24, 2026); Worcester State University, *Undergraduate Tuition & Fees, 2025-2026*, https://www.worcester.edu/admissions-aid/cost-financial-aid/undergraduate-tuition-fees/ (last visited June 24, 2026).

[7] *See, e.g.*, Berkshire Community College, *Tuition and Fees Explained*, https://www.berkshirecc.edu/admission-and-aid/tuition-and-fees/tuition-and-fees-explained.php (last visited June 24, 2026); Cape Cod Community College, *Tuition and Fees*, https://live-capecod.cleancatalog.io/tuition-and-fees (last visited June 24, 2026); Bunker Hill Community College, *Tuition & Fees*, https://www.bhcc.edu/tuition/ (last visited June 24, 2026).

[8] *See* 8 U.S.C. § 1101(a)(15)(A)-(S) (defining the term "immigrant" to mean every alien except those within the classes of nonimmigrant aliens enumerated in (a)(15)).

(3) provides "the institution of higher education where the eligible individual is or plans to become enrolled, with a high school transcript or certificate demonstrating completion of the equivalent thereof in the commonwealth."[9].

Mass. Gen. Laws ch. 15A, § 9.

33.    Accordingly, the tuition rate for illegal aliens in Massachusetts who satisfy Section 9's criteria is the same as the tuition rate for other Massachusetts residents. *Id.* Conversely, a U.S. citizen that is not eligible for in-state tuition under Section 9, due to residency requirements, is required to pay higher, nonresident tuition.

34.    Put simply, Section 9's requirements confer preferential treatment to illegal aliens within our Nation over U.S. citizens on the basis of residence. That clearly contravenes Congress's command in Section 1623(a).

## II. Massachusetts Makes Illegal Aliens Eligible for Scholarships and Financial Assistance on the Basis of Residence

35.    In direct conflict with Federal law, Massachusetts law also rewards an illegal alien present in our Nation with eligibility for state-funded scholarships and financial assistance based on residence within Massachusetts while explicitly denying eligibility for the same state-funded scholarships and assistance to U.S. citizens who are not Massachusetts residents.

36.    Since Section 9 was passed into law in 2023, Massachusetts has operated its own state financial aid program via the Massachusetts Application for State Financial Aid ("MASFA")—specifically set up to encourage and facilitate applications for state financial aid from students who are ineligible to complete the Free Application for Federal Student Aid ("FAFSA")—including illegal aliens who are rightly barred from access to Federal Student Aid funds.[10] The MASFA program demonstrates yet another subversion of federal law by Massachusetts.

---

[9] To receive in-state tuition benefits, Section 9 requires an individual provide "a valid social security number"; or "a document reflecting issuance of an individual taxpayer identification number"; or "documentation of registration with the selective service"; or "*if that individual is not a citizen of the United States or a legal permanent resident of the United States, an affidavit signed under the pains and penalties of perjury stating that the individual has applied for citizenship or legal permanent residence or will apply for citizenship or legal permanent residence in accordance with federal laws and regulations within 120 days of eligibility for such status.*" Mass. Gen. Laws ch. 15A, § 9 (emphasis added).

[10] Massachusetts Department of Higher Education Office of Student Financial Assistance, *Massachusetts Application for State Financial Aid (MASFA)*, https://www.mass.edu/osfa/students/masfa.asp (last visited June 24, 2026).

37.    Eligibility for Massachusetts state financial aid programs is similarly based on the residency requirements that Massachusetts uses to make illegal aliens eligible for in-state tuition and, thereby inviting applicants (other than a nonimmigrant alien within the meaning of 8 U.S.C. § 1101(a)(15)(A) to (S)) to complete the MASFA if the individual:

(1) is ineligible or unable to complete the FAFSA; and

(2) attended high school in the commonwealth for not less than 3 years and graduated from a high school in the commonwealth or attained the equivalent thereof in the commonwealth; and

(3) has physically resided in Massachusetts for at least one year.[11]

38.    Furthermore, pursuant to its broad and sweeping authority under, Mass. Gen. Laws ch. 15A, § 9, the Massachusetts Department of Higher Education Office of Student Financial Assistance ("OSFA") makes illegal alien students eligible for all grants, internships, scholarships, tuition waivers, loans and tuition reimbursement programs that require Massachusetts residency and are unavailable to non-residents.

39.    The Commissioner, appointed by the Secretary of the Council of the Department of Higher Education, is responsible for, *inter alia*, "carrying out the policies established by the council," Mass. Gen. Laws ch. 15A, § 6, and serves as the "executive and administrative head of the department." *Id.* "The commissioner [is] the secretary to the council and its chief executive officer and the chief school officer for higher education." *Id.*

40.    OSFA, the Commissioner, the Massachusetts Department of Higher Education, and the related public institutions of higher education system Boards administer scholarships, grants, and funds designed to help students pay for college tuition and related expenses.

41.    OSFA administers programs dealing with "access to postsecondary education" including "by loans, grants, scholarships or other means."[12]

---

[11] *See id.*

[12] OSFA, *About the Office of Student Financial Assistance*, https://www.mass.edu/osfa/home/about.asp (last visited June 24, 2026).

42. Under Section 9, illegal aliens are eligible on the same terms as other Massachusetts residents for state-funded financial assistance at state-funded public and state-approved private, independent nonprofit institutions of higher education. Mass. Gen. Laws ch. 15A, § 9.

43. For example, OSFA administers the MASSGrant Plus program which covers the full cost of tuition and fees for awarded students and makes such grants available to full-time and part-time students.

44. MASSGrant Plus "offers need-based assistance to Massachusetts students enrolled at approved Massachusetts higher education institutions."[13]

45. MASSGrant Plus conditions eligibility on residence. Using the same proxy for residence as Section 9, OSFA's guidelines allow "approved eligibility status designated by the BHE pursuant to the Massachusetts Tuition Equity Law," to substitute for the otherwise mandated Massachusetts residency requirement.[14]

46. The amount of a MASSGrant Plus award for an eligible student is as follows: MASSGrant Plus Award = Tuition and Fees (minus) All Other Non-Loan Aid. An additional MASSGrant Plus Allowance and Support Award for books and supplies, and other approved costs, may be available to students enrolled at any one of the Commonwealth's public two-year or four-year colleges or universities and who meet the eligibility requirements. The maximum Allowance and Support Award in any academic year shall be $1,200 and shall not exceed $600 in any single semester.[15]

47. OFSA also defines the requirements of eligibility for various merit-based Massachusetts State Scholarships. *See* Mass. Gen. Laws ch. 15A, § 16.

48. In addition to specific academic requirements, such as class rank, financial need, and test scores, illegal alien eligibility for Massachusetts State Scholarships is determined by Section 9 and is therefore based on residency.

49. Massachusetts State Scholarships are only available at eligible Massachusetts institutions of higher education. *Id.*

---

[13] OSFA, *MASSGrant Plus*, https://www.mass.edu/osfa/programs/massgrantplus.asp (last visited June 24, 2026).
[14] *Id.*
[15] *Id.*

50. The John and Abigail Adams Scholarship is one such residence based financial aid program administered by OSFA.[16]

51. "The John and Abigail Adams Scholarship is a merit-based program that provides a credit toward tuition for up to eight semesters of undergraduate education at a Massachusetts state college or university. For this scholarship, merit is based on student scores on the 10th grade Massachusetts Comprehensive Assessment System (MCAS) test." *Id.*

52. In addition to test scores and other requirements, illegal aliens are eligible for the John and Abigail Adams Scholarship on the basis of residence under Section 9. That is because although one pathway for eligibility turns on Massachusetts Board of Higher Education Residency Status Policy,[17] which requires an alien to be either a "lawful immigrant" or "authorized by the federal government to live and work in the United States on a temporary or permanent basis," the alternative pathway to scholarship eligibility requires satisfying the requirements of Mass. Gen. Laws ch. 15A, § 9, which can be satisfied regardless of whether an alien has lawful status.

53. Thus, the John and Abigail Scholarship is just one of many examples of scholarships and grants Massachusetts makes available to Massachusetts residents and illegal aliens alike, while barring US citizens who are residents of other states from accessing the same.

54. All showing, that under Massachusetts law, illegal aliens are eligible for other merit- and need-based scholarships and grants on the basis of residence: Behavioral Health Workforce Scholarship Program (up to $25,000), Christian A. Herter Memorial Scholarship Program (awards vary), Community College Nursing Scholarship Program (awards vary), Early Childhood Educators Scholarship (up to $6,750), GEAR UP Scholarship (awards vary), High Demand Scholarship Program (awards vary), In-Demand Scholarship (awards vary), John and Abigail Adams Scholarship (awards vary), One Family Scholarship Program (awards vary), Paul Tsongas Scholarship (awards vary), Tomorrow's Teachers (up to $25,000 per year), Free Community College, MASSGrant (awards vary), MASSGrant Plus (up to $1,200), Foster Child

---

[16] OSFA, *John and Abigail Adams Scholarship State*, https://www.mass.edu/osfa/programs/adams.asp (last visited June 24, 2026).

[17] Massachusetts Department of Higher Education, *Residency Policy* (2007) (last visited June 25, 2026), https://www.mass.edu/bhe/lib/documents/2008-11-12ResidencyStatuswithFormandDocuments.pdf.

Grant (up to $6,000), Gilbert Matching Student Grant Program ($200-$2,500), Cash Grant Program (awards vary), Massachusetts Part-Time Grant (awards vary), Massachusetts Public Service Grant (awards vary), Paraprofessional Teacher Preparation Grant (up to $13,500).[18] *See* Mass. Gen. Laws ch. 15A, §§ 9, 16.

55.     Each of these scholarship and grant programs, notwithstanding various additional eligibility requirements, make illegal aliens eligible on the basis of residence under Section 9.

### THE MASSACHUSETTS LAWS ARE PREEMPTED

56.     The Constitution's Supremacy Clause mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

57.     Express preemption occurs when Congress, through statutory language, explicitly supersedes all state enactments in a particular area. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983).

58.     Federal statutes may preempt state laws and render them ineffective. They may do this expressly, by declaring that intent on the face of the statute. *Arizona v. United States*, 567 U.S. 387, 399 (2012) ("There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision.").

59.     "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (citation and quotation marks omitted); *see also Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (explaining that under the Supremacy Clause, state laws that conflict with Federal law are "without effect"); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (same).

60.     When the Federal statute contains an express preemption clause, the court does not indulge "any presumption against pre-emption but instead focus[es] on the plain wording of the

---

[18] OSFA, *State Financial Aid Programs*, https://www.mass.edu/osfa/programs/programs.asp (last visited June 24, 2026).

clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation omitted). Further, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Nat'l Ass'n of Indus. Bankers v. Weiser*, 159 F.4th 694, 711 (10th Cir. 2025) (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)).

61.     Here, Section 1623(a) contains an express preemption clause as it directs that "[n]otwithstanding any other provision of law," an illegal alien "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

62.     As indicated by its title—'Limitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits'—§ 1623(a) mandates that all U.S. citizens must be eligible for a benefit regardless of residency before any illegal alien can receive that benefit based on residency.

63.     At least three courts have confirmed that Section 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023); *see also Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a) "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state U.S. citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *3 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

64.     Since 2025, four other courts have enjoined laws similar to those challenged here. The United States District Court for the Northern District of Texas held that 8 U.S.C. § 1623(a) expressly preempted Texas Education Code §§ 54.051(m) and 54.052(a), which permitted illegal aliens to qualify for in-state tuition, even though out-of-state American citizens were not afforded the same benefit. *See United States v. Texas*, 350 F.R.D. 74, 79–81 (N.D. Tex. 2025); *see also United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025)

13

(permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause). In so doing, the court found that Section 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible." *Texas*, 350 F.R.D. at 79 (citation and internal citations omitted).

65.     Similarly, the United States District Court for the Eastern District of Oklahoma found that Oklahoma in-state tuition provisions "as applied to aliens who are not lawfully present in the United States, violate[] the Supremacy Clause and are unconstitutional and invalid." *United States v. Oklahoma*, No. 6:25-cv-00265, ECF 23 at 1 (E.D. Okla. Aug. 29, 2025) (Order and Final Consent Judgment); *see also United States v. Oklahoma*, No. 6:25-cv-00265, ECF 11 at 1 (E.D. Okla. Aug. 7, 2025) (Report and Recommendation) (holding that Section 1623(a) expressly preempts Oklahoma laws providing that individuals "who are not lawfully present in the United States may qualify for in-state tuition or nonresident tuition waivers if they meet certain residency and high school graduation criteria").

66.     The United States District Court for the Eastern District of Kentucky entered a consent judgement between Plaintiff United States of America and Defendant Kentucky Council on Postsecondary Education ("CPE") permanently enjoining the Kentucky CPE from enforcing Kentucky regulation 13 KAR 2:045, Section 8(4)(a) (eff. 6-22-2022), the Tuition Assessment Regulation. See ECF 57, Opinion & Order, *United States v. Kentucky Council on Postsecondary Educ., et al.*, No. 3:25-cv-00028 (E.D. Ky. Mar. 31, 2026). The Kentucky regulation allowed illegal aliens who graduated from a Kentucky high school, among other criteria, to be considered Kentucky residents for purposes of in-state tuition. The court found that the Kentucky regulation violated federal law, 8 U.S.C. § 1621(d), because it was promulgated and enforced by the Kentucky CPE and therefore was not a valid State law, which Section 1621(d) requires, but a regulation instead. see id. at 21. The court noted its subject matter jurisdiction per 28 U.S.C. §§ 1331, 1345 (*see id.* at 6, 7), and found that although both parties agreed on the merits of the consent judgement, a "justiciable controversy remains present[,]" as the Kentucky CPE continued to enforce the

regulation. id. at 8. The court determined that it had jurisdiction and adopted the consent decree "[h]aving determined that the proposed consent decree is necessary to remedy a violation of federal law, the Court must approve it…" *Id*. at 21.

67.     On June 3, 2026, the United States District Court for the District of Nebraska entered a consent judgement between Plaintiff United States of America and Defendant the State of Nebraska permanently enjoining the Nebraska from enforcing Neb. Rev. Stat. §§ 85-502, 85-1907(3), 85-2102(6), and 85-3202(6). *United States v. Nebraska*, ---F.Supp.3d--- 2026 WL 1584862 (2026). The now preempted Nebraska laws "allow[ed] aliens unlawfully present in the United States who me[]t certain Nebraska residency requirements to pay in-state tuition rather than out-of-state tuition," and made illegal aliens eligible for "state educational grant or scholarship programs" on the same basis. *Id.* at *1. The court held that the Nebraska laws were preempted by Section 1623(a) because "they allow aliens unlawfully present in the United States to qualify as 'residents' of Nebraska for the purpose of post-secondary education benefits but deny such benefits to United States citizens of other states." *Id.* at *27. Additionally, the court found that a "Case or Controversy" remained despite the "[f]riendly" nature of the lawsuit because "[t]he Nebraska Attorney General's position—agreeing with the legal contention of the United States but refusing to give it effect—means that there is a justiciable controversy between the parties, despite the apparent inconsistency in the Nebraska Attorney general's position." *Id.* at *20 (citing *United States v. Windsor*, 570 U.S. 744, 756 (2013)).

68.     Here, Mass. Gen. Laws ch. 15A, § 9 conflicts with 8 U.S.C. § 1623(a) because the state law confers eligibility for post-secondary education benefits to aliens not lawfully present in the United States that are not available to U.S. citizens on the same terms, regardless of residency.

69.     Section 9 makes illegal aliens eligible for in-state tuition benefits on the basis of residence.

70.     Section 9 also makes illegal aliens eligible for financial assistance, scholarships, and grants on the basis of residence.

71.     Resident tuition, scholarships, financial assistance, and grants for college and university students are post-secondary education benefits. 8 U.S.C. § 1623(a).

72.    Unlike illegal aliens residing in Massachusetts, U.S. citizens who do not meet the requirements of Mass. Gen. Laws ch. 15A, § 9, are not eligible for postsecondary education benefits in no less an amount, duration, and scope without regard to whether the citizen is such a resident. 8 U.S.C. § 1623(a).

73.    As a result, Section 1623(a) expressly preempts Section 9 because that statute bestows eligibility for postsecondary education benefits on illegal aliens that U.S. citizens who reside elsewhere are not eligible for. Section 9 is, therefore, unconstitutional.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION OF MASS. GEN. LAWS CH. 15A, § 9 TUITION)

74.    The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

75.    Section 9, because it extends eligibility for in-state tuition benefits to illegal aliens, violates Federal immigration law. It directly conflicts with Congress's prohibition on providing eligibility for postsecondary education benefits (lower, resident tuition rates) based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

76.    Accordingly, the challenged provision, Mass. Gen. Laws ch. 15A, § 9, is preempted and unconstitutional.

### COUNT II
### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION OF MASS. GEN. LAWS CH. 15A, § 9 – FINANCIAL ASSISTANCE)

77.    The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

78.    Section 9, because it extends eligibility for postsecondary financial assistance—such as scholarships and grants—to illegal aliens, violates Federal immigration law. It directly conflicts with Congress's prohibition on providing eligibility for postsecondary education benefits

based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

79.    Accordingly, the challenged provision, Mass. Gen. Laws ch. 15A, § 9, is preempted and unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1.    That this Court enter a judgment declaring M.G.L. c. 15A, § 9 violates the Supremacy Clause because it extends eligibility for postsecondary education benefits to illegal aliens, and is therefore unconstitutional and invalid;

2.    That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing M.G.L. c. 15A, § 9, because it extends eligibility for postsecondary education benefits to illegal aliens;

3.    That this Court award the United States its costs and fees in this action; and

4.    That this Court award any other relief it deems just and proper.

DATED: June 29, 2026

Respectfully Submitted

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

*/s/Bronwyn Nayci*
EAL Attorney, FL Bar No. 1018924
United States Department of Justice
P.O. Box 386
Washington, D.C. 20044
Tel: 202-598-6429
Email: Bronwyn.H.Nayci@usdoj.gov

*Attorneys for the United States*