**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA,

Plaintiff,

v.

COMMONWEALTH OF MASSACHUSETTS; MASSACHUSETTS BOARD OF HIGHER EDUCATION; and NOE ORTEGA, Ex Officio, Commissioner of Higher Education and Secretary to the Board of Higher Education, in his official capacity,

Defendants.

Case No. 1:26-cv-12952

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6)**

## TABLE OF CONTENTS

INTRODUCTION ..... 1
FACTUAL BACKGROUND ..... 2
I. Federal Law ..... 2
II. The Tuition Equity Law ..... 3
ARGUMENT ..... 4
I. Legal Standard ..... 4
II. The United States Lacks Standing to Challenge the Tuition Equity Law ..... 5
III. Section 1623 Does Not Expressly Preempt the Tuition Equity Law ..... 7
A. The Tuition Equity Law Does Not Provide Eligibility for Postsecondary Education Benefits "On the Basis of Residence" ..... 8
B. The Tuition Equity Law Makes U.S. Citizens and Nationals Eligible for Postsecondary Education Benefits "Without Regard to" Residence ..... 12
C. The United States' Cited Caselaw is Inapposite ..... 14
IV. In Any Case, § 1623 Violates the Tenth Amendment ..... 16
CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 5

*BedRoc Ltd., LLC v. United States*,
541 U.S. 176 (2004) ... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 5

*Bower v. Egyptair Airlines Co.*,
731 F.3d 85 (1st Cir. 2012) ... 7, 8

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
589 U.S. 327 (2020) ... 9

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ... 7

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013) ... 7

*D.V.D. v. Dep't of Homeland Security*,
821 F. Supp. 3d 102 (D. Mass. 2026) ... 13

*Equal Access Educ. v. Merten*,
305 F. Supp. 2d 585 (E.D. Va. 2004) ... 16

*FDA v. All. for Hippocratic Med.*,
60 U.S. 367 (2024) ... 6

*Foss v. Ariz. Bd. of Regents*,
2019 WL 5801690 (Ariz. App. Div. Nov. 7, 2019) ... 16

*Grajales v. P.R. Ports Auth.*,
682 F.3d 40 (1st Cir. 2012) ... 5

*Hochendoner v. Genzyme Corp.*,
823 F.3d 724 (1st Cir. 2016) ... 5

*Horne v. Flores*,
557 U.S. 433 (2009) ... 15

*Kolackovsky v. Town of Rockport*,
165 F.4th 114 (1st Cir. 2026) ..... 5

*Langton v. Hogan*,
71 F.3d 930 (1st Cir. 1995) ..... 15

*Lorillard Tobacco Co. v. Reilly*,
533 U.S. 525 (2001) ..... 7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..... 5, 7

*Martinez v. Regents of the Univ. of Cal.*,
241 P.3d 855 (Cal. 2010) ..... 2, 9, 10, 11, 18

*Massachusetts v. EPA*,
549 U.S. 497 (2007) ..... 6

*Murphy v. NCAA*,
584 U.S. 453 (2018) ..... 2, 17, 18, 19

*Nat'l Rev. Corp. v. Violet*,
807 F.2d 285 (1st Cir. 1986) ..... 15

*New York v. United States*,
505 U.S. 144 (1992) ..... 17, 19

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021) ..... 13

*Printz v. United States*,
521 U.S. 898 (1997) ..... 17

*R&D Master Enterprises, Inc. v. Fin. Oversight & Mgmt Brd. For P.R.*,
75 F.4th 41 (1st Cir. 2025) ..... 6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..... 5

*United States v. California*,
824 F. Supp. 3d 1079 (C.D. Cal. 2026) ..... 6, 7

*United States v. City of Arcata*,
629 F.3d 986 (9th Cir. 2010) ..... 7

*United States v. City of Boston*,
833 F. Supp. 3d 30 (D. Mass. 2026) .......... 6

*United States ex rel. Heineman-Guta v. Guidant Corp.*,
718 F.3d 28, 35 (1st Cir. 2013) .......... 12

*United States v. Illinois*,
2026 WL 2137256 (S.D. Ill. July 24, 2026).......... 15, 18

*United States v. Ky. Council on Postsecondary Educ.*,
2026 WL 880597 (E.D. Ky. Mar. 31, 2026) .......... 14

*United States v. Mattson*,
600 F.2d 1295 (9th Cir. 1979) .......... 7

*United States v. Nebraska*,
2026 WL 1584862 (D. Neb. June 3, 2026) .......... 14, 16

*United States v. Oklahoma*,
2025 WL 2815662 (E.D. Okla. Aug. 7, 2025) .......... 14

*United States v. Texas*,
350 F.R.D. 74 (N.D. Tex. 2025).......... 14

*United States v. Texas*,
181 F.4th 548 (5th Cir. 2026).......... 14, 18

*United States v. Walz*,
825 F. Supp. 3d 897 (D. Minn. 2026) .......... 2, 9, 10, 13

*Young Conservatives of Tex. Found. v. Smatresk,*
73 F.4th 304 (5th Cir. 2023).......... 16

**Statutes**

G.L. c. 15A, § 9 .......... 1, 4, 9

G.L. c. 71, § 6A .......... 9

Neb. Rev. Stat. § 85-502 .......... 14

Okla. Stat., tit. 70, § 3242 .......... 14

Tex. Educ. Code § 54.052(a)(3).......... 14

8 U.S.C. § 1101(a) .......... 3, 4, 9, 11

8 U.S.C. § 1621 ........ *passim*

8 U.S.C. § 1622 ........ 19

8 U.S.C. § 1623 ........ *passim*

8 U.S.C. § 1625 ........ 18

8 U.S.C. § 1641(a) ........ 3

**Rules**

Fed. R. Civ. P. 12(b)(1) ........ 4

Fed. R. Civ. P. 12(b)(6) ........ 5

# INTRODUCTION

On June 29, 2026, the United States filed a two-count Complaint alleging that the Massachusetts Tuition Equity Law, G.L. c. 15A, § 9, is unconstitutional and preempted by a federal statute, 8 U.S.C. § 1623. But the United States' Complaint is based on a fundamental misreading of these laws that cannot be reconciled with their plain text. Contrary to the allegations in the Complaint, the Massachusetts Tuition Equity Law extends access to in-state tuition and state-funded financial aid to eligible students—including U.S. citizens, permanent residents, and undocumented immigrants—in a manner entirely consistent with federal law. The United States' Complaint should be dismissed on three independent grounds.

First, the Complaint does not allege that the United States has suffered any injury because of the Tuition Equity Law. Like all plaintiffs, the United States must establish Article III standing. It fails to do so here. The Complaint should be dismissed on this ground alone.

Second, the Tuition Equity Law is not preempted by federal law. Federal law permits states to enact legislation that extends eligibility for state benefits to undocumented immigrants, with a narrow limitation: undocumented immigrants shall not be eligible for postsecondary education benefits "on the basis of residence" within a state. *See* 8 U.S.C. §§ 1621(d), 1623(a). The Tuition Equity Law does not confer eligibility for postsecondary education benefits "on the basis of residence" in Massachusetts. Instead, the Tuition Equity Law confers eligibility for postsecondary education benefits based on a student's attendance at and graduation from a Massachusetts high school—criteria that are distinct from, and do not require, establishing residency in Massachusetts. The Court should dismiss the Complaint for the independent reason that the Tuition Equity Law is not preempted by federal law.

Third, 8 U.S.C. § 1623 is a directive from Congress that regulates states' provision of in-state tuition and benefits, and it is therefore unconstitutional. The anticommandeering principle

enshrined in the Tenth Amendment of the U.S. Constitution provides that Congress does not have the power to issue direct commands to the states. *Murphy v. NCAA*, 584 U.S. 453, 470 (2018). Because § 1623 seeks to regulate how states may administer state-funded tuition and aid to students, it unconstitutionally commandeers the states' regulatory powers and has no preemptive effect. This provides yet another independent basis on which this Court should dismiss the Complaint.

This is not the first lawsuit the United States has filed asserting preemption of state laws governing postsecondary education benefits. But unlike the cases the United States cites in its Complaint—which followed consent judgments with states that agreed to nullify their laws and addressed statutes that are fundamentally different from the Tuition Equity Law at issue here—both courts that have addressed state laws materially similar to the Tuition Equity Law have held those state laws not preempted by federal law. *United States v. Walz*, 825 F. Supp. 3d 897 (D. Minn. 2026); *Martinez v. Regents of the Univ. of Cal.*, 241 P.3d 855 (Cal. 2010); *cert. denied*, 563 U.S. 1032 (2011). The Court should do the same here.

## FACTUAL BACKGROUND

### I. Federal Law

In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act, Pub. L. No. 104-193, 110 Stat. 2105 (1996) ("PRWORA"), and the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, Div. C, 110 Stat. 3009 (1996) ("IIRIRA"), which enacted 8 U.S.C. § 1621 and § 1623, respectively. Sections 1621 and 1623 address the eligibility of undocumented immigrants to receive certain state and local benefits—but neither law makes undocumented immigrants categorically ineligible for such benefits. To the contrary, 8 U.S.C. § 1621 provides that undocumented immigrants are "not eligible for any State or local public benefit" under certain terms specified by the statute, *see* 8

U.S.C. § 1621(a), but further explains that states may "affirmatively provide[] for such eligibility" as follows:

> A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible … only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility.

8 U.S.C. § 1621(d).

8 U.S.C. § 1623 creates a narrow limitation on the eligibility of undocumented students for higher education benefits on the basis of residence, providing that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a). IIRIRA defines "residence" as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33); *see also* 8 U.S.C. § 1641(a) (explaining that "the terms used in [Chapter 8] have the same meaning given such terms" in 8 U.S.C. § 1101(a)).

## II. The Tuition Equity Law

The Massachusetts Board of Higher Education (the "Board") has long provided a pathway for certain individuals who reside in Massachusetts to obtain in-state tuition rates at Massachusetts colleges and universities. But as the United States acknowledges, that pathway is not—and has never been—available to undocumented students. Doc. No. 1 ("Compl.") ¶ 52. Instead, that pathway makes in-state tuition available to U.S. citizens, lawful immigrants, permanent residents, and holders of another legal immigration status who have resided in Massachusetts for at least twelve months prior to the beginning of the academic year. *Id.* (citing Massachusetts Department of Higher Education, *Residency Policy* (2007)).

In 2023, Massachusetts passed the Tuition Equity Law, House Bill H4040, subsequently codified at G.L. c. 15A, § 9. The Tuition Equity Law expands student eligibility for higher education benefits, providing an additional pathway for access to in-state tuition rates and state financial aid without reference to residency. The Tuition Equity Law confers eligibility on any student, "other than a nonimmigrant alien within the meaning of 8 U.S.C. § 1101(a)(15)(A) to (S),"[1] subject to certain requirements. G.L. c. 15A, § 9, ¶ 5. The Tuition Equity Law provides that such a student who is admitted to a public institution of higher education "shall be eligible to pay in-state tuition rates and fees at public institutions of higher education and shall be eligible on the same terms as other individuals for state-funded financial assistance," so long as the student:

1. "[A]ttended high school in the commonwealth for not less than 3 years," and
2. "[G]raduated from a high school in the commonwealth or attained the equivalent thereof in the commonwealth."

G.L. c. 15A, § 9, ¶ 5. Students are also required to provide a valid social security number; a document reflecting issuance of an individual taxpayer identification number; documentation of registration with the selective service; or, if the student is not a citizen or legal permanent resident of the United States, an affidavit "stating that the individual has applied for citizenship or legal permanent residence or will apply for citizenship or legal permanent residence in accordance with federal laws and regulations within 120 days of eligibility for such status." *Id.*

## ARGUMENT

### I. Legal Standard

On a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the plaintiffs carry the burden of establishing sufficient facts to plausibly demonstrate standing."

[1] "[N]onimmigrant alien" is defined in 8 U.S.C. § 1101(a)(15)(A) to (S) to include individuals who are temporarily in the United States, such as diplomats, visitors, and exchange students.

*Kolackovsky v. Town of Rockport*, 165 F.4th 114, 119 (1st Cir. 2026). "Neither conclusory assertions nor unfounded speculation can supply the necessary heft." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016). The requisite elements to establish standing must be present on the face of the complaint. *See Kolackovsky*, 165 F.4th at 120 ("Assertions of harm set forth in briefs cannot fill the void left by the lack of adequate allegations in the complaint.").

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). On a motion to dismiss, courts accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). This standard is not without important limitations. A court need not accept "legal conclusions" as true, including a legal conclusion that is "couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

## II. The United States Lacks Standing to Challenge the Tuition Equity Law

To establish standing, a plaintiff must show that (1) they have suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). As the party invoking federal jurisdiction, a plaintiff "bears the burden of pleading facts necessary to demonstrate standing[.]" *Hochendoner*, 823 F.3d at 730. The United States cannot meet its burden here, as the Complaint does not allege that the United States has suffered any injury at all.

"To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021); *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007)

("[T]he party bringing suit must show that the action injures him a concrete and personal way. The requirement is not just an empty formality."). "As Justice Scalia memorably said, Article III requires a plaintiff to first answer a basic question: 'What's it to you?'" *FDA v. All. for Hippocratic Med.*, 60 U.S. 367, 379 (2024). The Complaint does not, and indeed cannot, answer this question.

The Complaint is entirely silent as to what, if any, injury the United States suffered as a result of the Tuition Equity Law. Like all plaintiffs, the United States must establish standing. *All. for Hippocratic Med.*, 602 U.S. at 378–79 ("Federal courts do not issue advisory opinions about the law—even when requested by the President."); *United States v. City of Boston*, 833 F. Supp. 3d 30, 40–41 (D. Mass. 2026) (holding that "the United States bears the burden of demonstrating that is has standing" and dismissing complaint for lack of Article III standing); *United States v. California*, 824 F. Supp. 3d 1079, 1082 (C.D. Cal. 2026) ("The principle [of standing] extends to the federal government at large, which similarly must establish its standing to bring suit in federal court."). But here, there are no factual allegations, for example, that the federal government is forced to expend funds, or incur any liabilities, or take any other action it would not be required to take because of the Tuition Equity Law. Nor are there allegations that the Tuition Equity Law is the cause of any concrete harm for the federal government, or that a ruling from this Court invalidating the law would redress any such harm. The United States' failure to allege any injury is reason alone for this Court to dismiss the Complaint. *See R&D Master Enterprises, Inc. v. Fin. Oversight & Mgmt. Brd. For P.R.*, 75 F.4th 41, 47 (1st Cir. 2025) ("Appellants must clearly allege facts demonstrating . . . that they've suffered an injury in fact." (citation and internal quotation marks omitted)).

To be sure, the Complaint contains allegations that the Tuition Equity Law is preempted by federal law, Compl. ¶¶ 56–73, allegations that fail for the reasons discussed in Section III, *infra*.

But the United States does not allege that the preemption of its laws constitutes injury. Even if it did, however, such allegations would be insufficient to establish Article III standing. Because the United States "is not the target of the challenged government action or inaction, 'standing . . . is ordinarily substantially more difficult to establish.'" *United States v. City of Arcata*, 629 F.3d 986, 989 (9th Cir. 2010) (quoting *Lujan*, 504 U.S. at 562). The Complaint contains no allegations that would allow it to establish standing, with no claims, for example, that the Tuition Equity Law impacts the operations of the United States. *See California*, 824 F. Supp. 3d at 1083–84 ("Perhaps [a state's] *enforcement* of the subject laws and regulations could give rise to an injury in fact by impeding the operations or functions of the federal government, but [the United States] neither pleads nor presents such a theory.") (emphasis in original); *cf. United States v. Mattson*, 600 F.2d 1295, 1300 (9th Cir. 1979) ("Any lesser standard than a showing of actual injury . . . would require a court to rule on important constitutional issues in the abstract, and allow a potential abuse of the judicial process."). And for good reason: the impact of the Tuition Equity Law is limited to the colleges and universities within Massachusetts and the students who attend those institutions. The United States does not fall within its ambit, and, for this reason, the Complaint should be dismissed for lack of Article III standing.

## III. Section 1623 Does Not Expressly Preempt the Tuition Equity Law

Under the Supremacy Clause of the Constitution, Article VI, clause 2, "Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). "Federal preemption may be either express or implied." *Bower v. Egyptair Airlines Co.*, 731 F.3d 85, 92 (1st Cir. 2013). The United States asserts only express preemption in this case. Compl. ¶¶ 61, 73. When analyzing express preemption, a court's "task is to 'identify the domain expressly pre-empted.'" *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001)). To do so, courts "focus first on the statutory

language, 'which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Id.* (citation omitted); *see also Bower*, 731 F.3d at 92 ("[T]he starting point for our analysis is the 'language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'") (citation omitted).

Section 1623 provides that an undocumented immigrant "shall not be eligible *on the basis of residence* within a State" for postsecondary education benefits "*unless a citizen or national of the United States is eligible* for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident."[2] The Tuition Equity Law is not preempted by federal law for at least two reasons: first, it does not make undocumented students eligible for higher education benefits "on the basis of residence," and second, it makes U.S. citizens and nationals eligible for higher education benefits "without regard to" residence. These grounds provide two independent bases for this Court to dismiss the Complaint.

### A. The Tuition Equity Law Does Not Provide Eligibility for Postsecondary Education Benefits "On the Basis of Residence"

Federal law permits states to enact laws that affirmatively provide undocumented immigrants with eligibility for state benefits, through state laws enacted after PRWORA. *See* 8 U.S.C. § 1621(d) ("A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible . . ."). 8 U.S.C. § 1623 contains only a narrow limitation on states' ability to affirmatively provide for such eligibility—a state may not make an undocumented immigrant eligible for postsecondary education benefits "*on the basis of residence* within a State."

The Tuition Equity Law is not preempted by § 1623 because it does not confer eligibility for postsecondary education benefits "on the basis of" residence, i.e., the student's "principal,

[2] All emphases in this brief are added unless otherwise noted.

actual dwelling place in fact." *See* 8 U.S.C. § 1101(a)(33) (defining "residence"). As courts have held in interpreting § 1623, the statutory phrase "on the basis of" requires a "but-for causal relationship between residency and eligibility for postsecondary education benefits." *Walz*, 825 F. Supp. 3d at 908–09 (collecting cases) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 335 (2020) (noting that "on the basis of" is "strongly suggestive of a but-for causation standard")); *cf. Martinez*, 241 P.3d at 864 ("The reference [in § 1623] to the benefit being on the basis of residence must have some meaning. It can only qualify, and thus limit, the prohibition's reach."). And the United States has conceded the same when interpreting § 1623 before other courts. *See* United States' Opp. to Mot. to Dismiss at 12, *United States v. Walz*, 0:25-cv-02668, Doc. No. 15 (August 13, 2025) (stating that "on the basis of" in § 1623 "incorporates a 'but-for' causation test.").

Under the Tuition Equity Law, there is no but-for causal relationship—indeed, no relationship at all—between a student's residence and the student's eligibility for postsecondary education benefits. The Tuition Equity Law confers eligibility on students who have, among other requirements, "attended high school in the commonwealth for not less than 3 years and graduated from a high school in the commonwealth or attained the equivalent thereof in the commonwealth," G.L. c. 15A, § 9—criteria that do not require establishing residency in Massachusetts. For example, a student may qualify for in-state tuition, even if they are not a resident of Massachusetts, if the student:

- Resided in a neighboring U.S. state but attended and graduated from a Massachusetts public[3] or private secondary school,

[3] Massachusetts law provides that a public school district may, under certain circumstances, accept in its schools a student who "resides outside the commonwealth." G.L. c. 71, § 6A.

- Resided in another U.S. state but attended and graduated from a Massachusetts boarding school, or
- Attended and graduated from a Massachusetts public or private secondary school but established residency in another state prior to attending college.

The Tuition Equity Law simply does not use residency as a basis for eligibility. Indeed, in contrast to the Tuition Equity Law, the Board offers a different pathway to eligibility for in-state tuition that *does* require establishing residency in Massachusetts for twelve continuous months prior to the beginning of the academic year—but the Board makes that pathway available only to U.S. citizens, permanent residents, and those with lawful immigration status, *supra* p. 3, and the United States, accordingly, does not challenge it. The United States' assertions that the Tuition Equity Law makes undocumented students eligible for in-state tuition and financial aid "based on residence" in Massachusetts, *see, e.g.*, Compl. ¶¶ 23, 35, 48, therefore fail as a matter of law.

Two courts—the District of Minnesota and the California Supreme Court—have already reached the same conclusion about the preemptive effect of § 1623 on materially similar state laws. *See Walz*, 825 F. Supp. 3d at 909; *Martinez*, 241 P.3d at 866. The challenged Minnesota and California laws, like the Massachusetts Tuition Equity Law, conferred eligibility on students who attended high school in the state for at least three years and either graduated from high school or attained the equivalent in the state. *Walz*, 825 F. Supp. 3d at 901; *Martinez*, 241 P.3d at 861. Both courts correctly concluded that those statutes were not preempted by federal law because eligibility was not determined "on the basis of residence." *Walz*, 825 F. Supp. 3d at 909 ("While these criteria certainly require some connection to Minnesota, they do not require Minnesota residency; the Resident Tuition Statute simply does not make eligibility for postsecondary education benefits contingent upon the location of a person's 'principal, actual dwelling place in fact.'"); *Martinez*,

241 P.3d at 863 ("The fatal flaw in plaintiffs' argument . . . is their contention that [the state law] exemption from paying out-of-state tuition is based on residence. It is not. It is based on *other* criteria . . . . " (emphasis in original)).

In contravention of the clear statutory language of § 1623, the United States alleges that undocumented students' eligibility for in-state tuition rates and state-funded financial aid, standing alone, violates federal law. *See, e.g.*, Compl. ¶ 75 (asserting that Section 9 is preempted because it "extends eligibility for in-state tuition benefits to illegal aliens"), ¶ 78 (same for financial aid). But "[i]f Congress had intended to prohibit states entirely from making unlawful aliens eligible for in-state tuition, it could easily have done so." *Martinez*, 241 P.3d at 861.[4] Congress instead elected to permit states to affirmatively extend eligibility for state benefits, with a narrow exception for postsecondary education benefits provided "on the basis of *residence*," 8 U.S.C. §§ 1621, 1623—a term that is defined in the federal statute, *see* 8 U.S.C. § 1101(a)(33). The United States' interpretation of § 1623 is inconsistent with the statute's plain text. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (citation omitted); *United States ex rel. Heineman-Guta v. Guidant Corp.*, 718 F.3d 28, 35 (1st Cir. 2013) ("We will not ordinarily read requirements into a statute that 'do not appear on its face.'") (citation omitted). The United States' incorrect expansive reading of § 1623 should be rejected.

[4] Defendants' position, of course, is that such an act of Congress would violate the Tenth Amendment for the reasons explained *infra*, Section IV.

Finally, the Complaint includes factual allegations that the guidelines for certain state-funded scholarships and financial aid programs established by the Board are "similar[]" to, or incorporate the requirements of, the Tuition Equity Law. *See, e.g.*, Compl. ¶¶ 37, 45, 52. These allegations do not save the Complaint from dismissal because they do not support the United States' sole two claims, both of which assert preemption of only the Tuition Equity Law itself. *See* Compl. ¶¶ 74–79.[5] The United States' two claims against the Tuition Equity Law must be dismissed.

### B. The Tuition Equity Law Makes U.S. Citizens and Nationals Eligible for Postsecondary Education Benefits "Without Regard to" Residence

While 8 U.S.C. § 1623 provides that an undocumented immigrant shall not be eligible for postsecondary education benefits "on the basis of residence within a State," the statute also contains an exception: an undocumented immigrant shall not be eligible for such benefits "*unless a citizen or national of the United States is eligible* for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." The Tuition Equity Law accordingly is not preempted for the independent reason that it makes U.S. citizens and nationals eligible for higher education benefits without regard to residence. In fact, while undocumented students have only one path to in-state tuition and state financial assistance for higher education in Massachusetts, U.S. citizens and nationals have two paths. The first path, not available to undocumented students, and not challenged by the federal government here, is that a U.S. citizen or national may be eligible for such benefits if the student resided in Massachusetts

[5] In any event, any claim challenging these financial aid or scholarship guidelines would fail, as none of the Board's current guidelines, including for the 2026–2027 year, confer eligibility on undocumented students on the basis of residence in Massachusetts. *See, e.g.*, Mass. Office of Student Financial Assistance, OSFA Action Letters, Action Letter #1 (Aug. 2026), https://www.mass.edu/osfa/schools/publications.asp.

for a period of time prior to the beginning of the academic year. And the second path, also available to undocumented students, is that a U.S. citizen or national may be eligible for such benefits—even if the student is not a resident of Massachusetts—if the student attended high school and graduated (or attained the equivalent) in Massachusetts. As explained *supra*, Section III.A, the latter path is not based on residence. Accordingly, the Tuition Equity Law is not preempted for the independent reason that it makes U.S. citizens and nationals eligible for postsecondary education benefits without regard to whether the citizen or national is a resident of Massachusetts.

Contrary to the plain terms of § 1623, the United States asserts that federal law "mandates that *all* U.S. citizens must be eligible for a benefit regardless of residency before *any* illegal alien can receive that benefit based on residency." Compl. ¶ 62; *see also id.* ¶ 19. That claim is inconsistent with the statutory text of § 1623. Section 1623 contains no requirement that "*all* U.S. citizens" be eligible for a postsecondary education benefit "before *any*" undocumented student is eligible for that benefit. Instead, § 1623 prohibits conferring eligibility to an undocumented student on the basis of residence "unless *a* citizen or national of the United States is eligible for such a benefit . . . without regard to whether *the* citizen or national is such a resident." "A" and "all" have different meanings, and the use of the singular "a" in § 1623 "means 'one' or 'any.'" *Walz*, 825 F. Supp. at 911–12; *Niz-Chavez v. Garland*, 593 U.S. 155, 164–65 (2021) (rejecting attempt to "transform every use of the singular 'a' into the plural 'several'"). The statute's later use of "*the* citizen or national"—a definite article—confirms that the earlier use of "a citizen" does not mean "all citizens." *Walz*, 825 F. Supp. at 911–12; *see also D.V.D. v. Dep't of Homeland Security*, 821 F. Supp. 3d 102, 156–57 (D. Mass. 2026) ("[I]t is a rule of law well established that the definite article 'the' particularizes the subject which it precedes." (citation omitted)). Had Congress intended to exclude *any* undocumented student from eligibility for a benefit unless *all*

U.S. citizens and nationals are eligible for that benefit, it could have done so in the text of § 1623. It did not. Accordingly, because the Tuition Equity Law makes U.S. citizens and nationals eligible for the same in-state tuition and financial aid benefits in Massachusetts without regard to residence—consistent with the terms of § 1623—the Tuition Equity Law is not preempted.

**C. The United States' Cited Caselaw is Inapposite**

The United States asserts that four courts have enjoined laws "similar to those challenged here." Compl. at ¶ 64. But each of the four cited decisions addressed laws fundamentally different from the law challenged here. The challenged Texas law made a student eligible for in-state tuition if the student, among other requirements, graduated from a Texas high school and "*maintained a residence continuously* in th[e] state" over a particular period. *See United States v. Texas*, 350 F.R.D. 74, 79–81 (N.D. Tex. 2025) (citing Tex. Educ. Code § 54.052(a)(3)); *aff'd* 181 F.4th 548, 557 (5th Cir. 2026) (holding that, under Texas law, "residence is a necessary condition for in-state tuition in Texas"). The challenged Oklahoma law required as a condition of eligibility that a student "*[r]esided* in [the] state with a parent or legal guardian" while attending high school. Okla. Stat., tit. 70, § 3242; *see also United States v. Oklahoma*, 2025 WL 2815662, at *1 (E.D. Okla. Aug. 7, 2025). The challenged Nebraska law included multiple eligibility pathways that were each based on a student's established home. *See United States v. Nebraska*, --F. Supp. 3d--, 2026 WL 1584862, at *22–23 (D. Neb. June 3, 2026) (citing Neb. Rev. Stat. § 85-502) ("[T]he first five subdivisions of § 85-502 all turn on where the student 'has established a home . . . where he or she is habitually present.'"). And the Kentucky Court did not even reach the preemption question as to § 1623, instead holding that the challenged Kentucky *regulation* was preempted by § 1621, "which allows states to extend postsecondary benefits to unlawful aliens only through the enactment of a *State law*." *United States v. Ky. Council on Postsecondary Educ.*, 2026 WL 880597, at *8, *10 (E.D. Ky. Mar. 31, 2026).

Further, in each of the United States' cited cases, the four respective state defendants elected not to defend their state laws and instead entered into consent judgments with the United States. These consent judgments are entitled to minimal persuasive weight. *Langton v. Hogan*, 71 F.3d 930, 935 (1st Cir. 1995) ("The way in which a consent judgment or consent decree resolves, between the parties, a dispute over a legal issue is not a ruling *on the merits* of the legal issue that . . . becomes precedent applicable to any other proceedings . . .") (emphasis in original); *see also Horne v. Flores*, 557 U.S. 433, 449 (2009) (noting special concerns about consent decrees, including that they "present a risk of collusion between advocacy groups and executive officials who want to bind the hands of future policymakers") (internal citation omitted); *cf. Nat'l Rev. Corp. v. Violet*, 807 F.2d 285, 288 (1st Cir. 1986) (state attorney general lacks authority to stipulate that state law is unconstitutional).[6]

While one additional court has since held a state law was preempted by § 1623, that decision, too, concerned a state law materially different from the one at issue here because the challenged law required a student to reside in the state, in addition to attending and graduating from a high school in the state, in order to establish eligibility for in-state tuition. *United States v. Illinois*, -- F. Supp. 3d --, 2026 WL 2137256, at *9 (S.D. Ill. July 24, 2026) (holding state law preempted by § 1623 where it "ties postsecondary education benefits to high-school attendance or graduation in the state *together with residence-related requirements* (such as living with a parent or guardian in the state or *residing in the stat*e while attending high school)"). By contrast, as explained above, *supra* pp. 10–11, the only two courts that have considered laws comparable to the Massachusetts Tuition Equity Law—which contains no residency requirement—have correctly

[6] In the Texas and Nebraska cases, the respective courts considered merits briefing from proposed intervenors regarding § 1623 in denying motions to intervene. But those decisions nonetheless concerned fundamentally different laws for the reasons explained *supra*, p. 14.

held those laws not preempted by federal law. And indeed, the Nebraska decision cited by the United States "contrast[ed]" the challenged Nebraska law with the Minnesota law (which is substantively analogous to the law at issue here), noting that the Minnesota law "*did not turn on residence at all*, but on where the student attended and graduated from high school." *Nebraska*, 2026 WL 1584862, at *26 n.2.

Finally, the United States cites three cases that have allegedly "confirmed that Section 1623(a) 'expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same.'" Compl. ¶ 63. These authorities are similarly unpersuasive. The court in *Young Conservatives of Tex. Found. v. Smatresk* addressed the same distinguishable Texas law cited above, stating in dicta (and without meaningful analysis) that the law "seem[ed] to conflict" with § 1623. 73 F.4th 304, 314 (5th Cir. 2023). And the courts in *Foss v. Arizona Bd. of Regents*, 2019 WL 5801690 (Ariz. Ct. App. Nov. 7, 2019), and *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585 (E.D. Va. 2004), did not even decide preemption issues regarding state laws governing postsecondary education benefits. The United States' cited language from *Foss* was part of the court's assessment of a different legal issue, namely, whether § 1623 provides non-resident students with a private right of action. 2019 WL 5801690, at *3. And the *Merten* court's passing "inference" that undocumented immigrants "cannot receive in-state tuition unless out-of-state United States citizens receive this benefit," 305 F. Supp. 2d at 606, is inconsistent with the statutory language of § 1623 for the reasons explained above, and it should not govern here.

The cases cited by the United States thus do not change the analysis. The Court should hold the Tuition Equity Law is not preempted by § 1623.

## IV. In Any Case, § 1623 Violates the Tenth Amendment

Even if there were a conflict between § 1623 and the Tuition Equity Law (there is not),

there would be no preemption because § 1623 is unconstitutional: it does not purport to regulate private actors and instead improperly commandeers the states.[7]

The Tenth Amendment provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. In this way, the Constitution establishes a system of "dual sovereignty" between the federal government and the states, *Murphy*, 584 U.S. at 470, which serves as "one of the Constitution's structural protections of liberty," *Printz v. United States*, 521 U.S. 898, 921 (1997). "Congress may not simply 'commandeer the legislative process of the States by directly compelling them to enact and enforce a federal regulatory program.'" *New York v. United States*, 505 U.S. 144, 161 (1992). This anticommandeering principle ensures "a healthy balance of power between the States and the Federal Government," "promotes political accountability" by making it clear to the public whether the federal government or states are responsible for a particular policy, and "prevents Congress from shifting the costs of regulation to the States." *Murphy*, 584 U.S. at 473–74.

In *Murphy*, the Supreme Court clarified the relationship between preemption and anticommandeering. Federal law may preempt state law when "Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *Id*. at 477. But where "there is no way in which [the federal law] can be understood as a regulation of private actors" because it "does not confer any federal rights on private actors," nor "impose any federal restrictions on private actors," then there is "simply no

[7] Because there is no conflict between federal and state law, this Court need not address the constitutionality of § 1623 in order to grant Defendants' Motion to Dismiss. Indeed, any of the three arguments raised in this memorandum are independent bases for dismissal.

way to understand the [federal law] as anything other than a direct command to the States. And that is exactly what the anticommandeering rule does not allow." *Id*. at 479–80.

As a threshold matter, § 1623 is precisely the type of Congressional command to states that the *Murphy* court deemed to violate the anticommandeering rule, and it should therefore be held unconstitutional. Section 1623, which addresses eligibility for postsecondary education benefits, is not aimed at undocumented students; it is aimed at the States and their institutions that would *offer* eligibility for postsecondary education benefits to undocumented students. *Murphy*, 584 U.S. at 478 (observing that courts "look beyond the phrasing employed in [the federal statute]" to assess whether it regulates states or private actors). The postsecondary education benefits at issue in this case—in-state tuition and state-funded financial aid—are benefits provided by states. *See Martinez*, 241 P.3d at 863 ("Section 1623(a) prohibits a *state* from making unlawful aliens eligible 'on the basis of residence within a State' for a postsecondary education benefit."); Compl. ¶ 17 (alleging that, under § 1623, "a *state* may not offer in-state tuition . . . to illegal aliens present in the United States based on their residence in the state . . ."). As a result, § 1623 does not regulate private actors and therefore does not have preemptive effect.[8]

The very structure of § 1623 makes clear that it targets the states; it is one of five sections in a subchapter titled "Eligibility for *State* and Local Public Benefits Programs," 8 U.S.C. ch. 14, subt. II. And within this subchapter, § 1623 appears alongside sections which, like § 1623, regulate

[8] The Illinois District Court and the Fifth Circuit wrongly rejected Tenth Amendment challenges on the basis that § 1623 addresses the eligibility of undocumented students and therefore allegedly does not operate as a command to the states. *See Texas*, 181 F.4th at 559–60; *Illinois*, 2026 WL 2137256, at *7. But neither court persuasively explained why that was the case, given that it is *states* that make such eligibility determinations. *See Texas*, 181 F.4th at 571 (Ramirez, J., dissenting) ("Because § 1623(a) prohibits States from conferring postsecondary education benefits based on residency, 'there is simply no way to understand the provision . . . as anything other than a direct command to the States.'" (citing *Murphy*, 584 U.S. at 480)).

states' provision of benefits. *See*, *e.g.*, 8 U.S.C. § 1622(a) ("[A] State is authorized to determine the eligibility for any State public benefits of an alien who is a qualified alien . . . ."); 8 U.S.C. § 1625 ("A State or political subdivision of a State is authorized to require an applicant for State and local public benefits . . . to provide proof of eligibility.").

Further, § 1623 improperly regulates *how* States determine who receives in-state tuition and financial aid and impermissibly overrides a state's discretion to manage its budget, determine how to fund its public education institutions, and exercise discretion and policy judgment to determine which students should be eligible for education benefits. *See New York*, 505 U.S. at 176 (holding unconstitutional a federal law that "enable[d] States to regulate pursuant to Congress' instructions in any number of different ways" because "[n]o matter which path the State choses, it must follow the direction of Congress"). Section 1623 violates the anticommandeering principle enshrined in the Tenth Amendment of the U.S. Constitution and therefore has no preemptive effect.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS; MASSACHUSETTS BOARD OF HIGHER EDUCATION; and NOE ORTEGA, Ex Officio, Commissioner of Higher Education and Secretary to the Board of Higher Education, in his official capacity,

By and through their Attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Natalie M. Morrissey*
Natalie M. Morrissey, BBO No. 709511
Mikaila V. Smith, BBO No. 716293
Assistant Attorneys General
Michelle Pascucci, BBO No. 690889
State Trial Counsel
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 727-2200
Natalie.Morrissey@mass.gov
Mikaila.Smith@mass.gov
Michelle.Pascucci@mass.gov

Dated: September 8, 2026

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

I hereby certify that I conferred with counsel for the Plaintiff over Microsoft Teams on September 4, 2026 regarding this motion. No agreement could be reached, and counsel for the Plaintiff indicated that Plaintiff intends to oppose this motion.

*/s/ Michelle Pascucci*
Michelle Pascucci
State Trial Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system on September 8, 2026 will be sent electronically to registered participants as identified in the Notice of Electronic Filing (NEF).

*/s/ Natalie M. Morrissey*
Natalie M. Morrissey
Assistant Attorney General